WILCOX OIL CO. et al.
v. FUQUA et al.

No. 33467.   June 13, 1950.

Rehearing Denied July 18, 1950.

*224 P. 2d 255.*

Savage, Gibson & Benefield, of Oklahoma City, for petitioners.

Wallace & Harkey, of Oklahoma City, for respondent J. M. Fuqua.

Mac Q. Williamson, Atty. Gen., for respondent State Industrial Commission.

Mont R. Powell, Anthony R. Kane, and Don Anderson, all of Oklahoma City, for respondent Special Indemnity Fund.

ARNOLD, V. C. J. This is an original proceeding brought by Wilcox Oil Company and Massachusetts Bonding & Insurance Company to review an award of the State Industrial Commission, entered by a trial commissioner, awarding compensation to J. M. Fuqua. An award was also entered against the Special Indemnity Fund, which Fund is made a party respondent to this proceeding. The claimant before the commission has filed a cross-appeal contending that the order is incorrect as to him and asks that it be vacated and the Industrial Commission be directed to enter an order in accordance with the testimony.

The trial commissioner, after hearing the evidence, found that respondent, in January, 1944, while in the employ of Wilcox Oil Company, sustained an accidental injury arising out of and in the course of his employment consisting of an injury to his right eye which resulted in a 75 per cent loss of vision of the eye and awarded respondent compensation accordingly. The com-

missioner further found respondent was at the time he sustained said injury a physically impaired person in that he had sustained a prior injury resulting in a 50 per cent loss of the use of his left hand; that as a result of both injuries he sustained a 25 per cent permanent partial disability to his body as a whole and awarded compensation against Special Indemnity Fund in the sum of $1,050 on the basis of 50 weeks at $21 per week.

The Special Indemnity Fund, without citation of authority, merely states that it does not take issue with the employer and claimant on the questions of whether an accidental injury, in the course of and arising out of the employment of the claimant, occurred, but says that if this court upholds the determination of these questions by the commission that the award is correct, otherwise, no award should have been made against the Fund.

Petitioners contend that the award is not supported by any competent evidence; that the statute of limitations had run barring the claimant; and that the rate of compensation is incorrect.

The evidence is undisputed that respondent, at some time, at some place and in some manner, received a piece of steel in his right eye which punctured the lens and developed a cataract resulting in a disability to the eye. There is no direct evidence showing how, when or where he sustained the injury. Respondent testified that on and prior to January 1, 1944, and since 1932, he was employed by the Wilcox Oil Company to perform work in and about rotary drilling rigs; that on said date he noticed that the sight in his right eye was growing dim; that he informed the head driller of this condition who directed him to go to Dr. Bailey, at Stroud, for examination and treatment; that he thereafter called on Dr. Bailey who examined his right eye and informed him that a piece of steel had lodged therein but that he was not equipped to remove the same and re-

ferred him to a specialist in Oklahoma City; that he called upon such specialist who advised him that a piece of steel had lodged in his eye. The specialist made a report to Dr. Bailey of his findings. The doctor was not satisfied with such report and directed respondent to go to another specialist, Dr. Coston, in Oklahoma City, who thereafter examined the eye, located the piece of steel therein and thereafter, on May 3, 1944, removed it. A cataract thereafter developed and that doctor, on March 1, 1946, removed it. Petitioners paid all hospital and medical and doctor bills and the costs of both operations. Respondent continued working for petitioner Wilcox Oil Company until about a month prior to the hearing herein, except that he lost 20 days' time when the steel was removed from his eye and one month and 3 days when the cataract was removed.

Respondent further testified that he did not know how or when he received the piece of steel in his eye; that he was employed as a rocker's helper by the Wilcox Oil Company; that his duties were to do general roustabout work and fix anything that might require fixing around the rigs; that he was required to work around and upon steel; that there was continuous hammering on steel and that he was required to work about the drilling rigs where chains were beating together while the drilling was in operation; that he had not been employed by any other person during this time where he was required to handle or work upon steel; that he had never engaged in any work of his own in working upon or around steel; that he knew of no other place where he could have received the steel in his eye. He, however, testified that he knew of no particular occasion when he was working or hammering upon steel that any particles or chips escaped therefrom and struck him in the eye, nor has he offered any testimony to show that frequently or at any time when others were so engaged that any particles or chips of steel escaped therefrom.

That an accident occurred there can be no doubt. In fact, this is conceded. To be compensable, however, it must have arisen in the course and out of claimant's employment. All the facts and circumstances show the strong probability that the steel pierced claimant's eye while he was engaged in the performance of the work for his employer, which was covered by the Workmen's Compensation Law, and shows the improbability of its occurrence at any other time or place. We think the evidence is reasonably sufficient to support the finding of the commission that the claimant suffered an accidental injury in the course and arising out of his employment. The cause of an injury and the time at which it occurred are questions of fact to be determined by the Industrial Commission. When its determination of the questions is reasonably supported by the evidence its findings will not be disturbed by this court. Shell Oil Co., Inc., v. Thomas et al., 202 Okla. 190, 211 P. 2d 263.

There is evidence that the doctor who performed the operations on claimant actually treated him until March 21, 1946; that thereafter the claimant returned at the direction of the doctor for examination and further treatment, if indicated, on April 10 and August 20, 1947; that no treatment was given on these dates because none was indicated; that claimant was released by the doctor as cured on the latter date.

Though no treatment was actually administered within one year of the filing of the claim November 5, 1947, examinations were made by the doctor furnished to determine if further treatment was necessary before release and within one year preceding the filing of the claim. Returning for examination and treatment if same is indicated, under direction of the doctor furnished by the employer, has the same effect as to the statute of limitations as actual treatment does. For the same reason the statute is tolled under such circumstances until the doctor releases the injured employee. Oklahoma Furniture Manufacturing Co. et al. v. Nolen et al., 164 Okla. 213, 23 P. 2d 381; International Supply Co. et al. v. Morrell, 187 Okla. 346, 102 P. 2d 846; and Denver Producing & Refining Co. et al. v. Holding et al., 199 Okla. 418, 186 P. 2d 815.

It is correctly conceded by claimant that the rate of compensation under the law applicable at the time of the accident should have been $18 per week instead of $21 per week.

Under his assignments of error in his cross-appeal claimant contends that the finding of the commission of 75 per cent loss of vision to the right eye is incorrect. In this connection he points out that the undisputed medical evidence as to the loss of vision in said eye was that there was a total loss of vision in the right eye. His contention in this regard must be sustained because there are no facts or circumstances shown which justify the commission in reducing the estimated disability in the vision of said eye to 75 per cent. Without medical testimony as to said loss of vision, there would have been no testimony on which to base a determination of loss of vision. Likewise, in the absence of other facts and circumstances which would justify the commission in disregarding the doctor's testimony in this respect to a certain extent, the commission is bound by the medical testimony on the loss of vision. Having arrived at this conclusion on this point, it is unnecessary to discuss the alleged error of the commission in determining the 50 per cent permanent partial loss of the use of claimant's left hand in the face of the medical testimony that said loss amounted to 60 per cent and the other contention that the medical testimony as to combined disability conclusively shows 80 per cent permanent partial disability to the body as a whole.

Award vacated.

DAVISON, C. J., and CORN, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.